UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BATON ROUGE

| | | |
|---|---|---|
| DIXIE ELECTRIC MEMBERSHIP CORPORATION | : | DOCKET NO. 3:12-078 |
| VS. | : | JUDGE TRIMBLE |
| AT&T CORP., ET AL | : | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is "BellSouth Telecommunications LLC's Motion to Dismiss" (R. #14) wherein BellSouth Telecommunications LLC ("BellSouth") seeks to dismiss plaintiff, Dixie Electric Membership Corp.'s ("DEMCO") complaint for damages for breach of contract, fraud, unfair trade practices, permanent injunction and attorneys fees. Also before the court is a "Partial Motion Dismiss and Prayer for Judgment" (R. #30) wherein DEMCO seeks to voluntarily dismiss its breach of contract claims for the 2010 contractual year and its claim under the Louisiana Unfair Trade Practices Act ("LUTPA") to the extent that such claim rests upon damages sustained during 2010. DEMCO specifically reserves any and all other claims it has asserted or may assert in this action.

BellSouth's motion was initially filed as a motion pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. In its opposition, DEMCO argued that because BellSouth was relying on evidence submitted outside the pleadings and asking the court to make factual determinations, it would be improper for the court to rule on the motion pursuant to Rule 12(b).[1] On May 15, 2012,

---

[1] Attached to the motion is a contract (R. #14-3), a check (R. #14-4), and an invoice (R. #14-5).

pursuant to an order, the court acknowledged that portions of the motion to dismiss relied on evidence outside the pleadings and thus converted the motion to a motion for summary judgment. The court then granted the parties additional time to conduct the necessary discovery and file supplemental briefs.[2] Consequently, DEMCO voluntarily moved to dismiss its breach of contract and LUTPA claims for the 2010 contractual year, but reserved its rights to any and all other claims asserted in this action.[3] DEMCO then suggests that if these claims are dismissed, the motion to dismiss would be ripe for consideration without any further discovery and/or briefing.

In response, BellSouth did not object to the voluntary dismissal of the breach of contract claim and LUPTA claim for the 2010 year, but maintains that the invoice and check submitted also support dismissal of DEMCO's claim for civil fraud.[4] As such, BellSouth maintains that the court should also dismiss the fraud claim for the 2010 year because the evidence proves that BellSouth paid DEMCO in full for the 2010 year. BellSouth argues that without injury, DEMCO cannot maintain its civil fraud claim as it relates to the year 2010. BellSouth also agrees that the remainder of its motion to dismiss is ripe for consideration by the court and that no additional discovery is needed at this time. We agree that the contractual claims, the LUTPA claims, and the civil fraud claims for the 2010 contractual year should be dismissed because the check and invoice submitted establish that DEMCO has been fully paid for the pole rentals for the 2010 contractual year and thus, there are no damages that could be asserted.

---

[2] R. #29.

[3] R. #30.

[4] R. #31.

2

## FACTUAL ALLEGATIONS

DEMCO is a non-profit Louisiana electric cooperative which provides electric service to approximately 100,000 members in the parishes of East Baton Rouge, Livingston, Ascension, St. Helena, East Feliciana, West Feliciana and Tangipahoa. DEMCO purchases electric power and then distributes the power to its members via electric power lines attached to tens of thousands of DEMCO-owned utility poles.

On or about January 1, 1981, DEMCO and South Central Bell Telephone Company, now BellSouth, executed a contract ("1981 contract") for the joint utilization of the utility poles. The 1981 contract provided that DEMCO and BellSouth could attach their respective lines and cables to each other's poles in the course of serving their new and existing customers. The 1981 contract set the terms of payment based on a per pole attachment. It also provided the procedure for written notification and information prior to attaching to a utility pole. The contract required that both DEMCO and BellSouth report annually to each other the total number of poles that each party used which belonged to the other party.

Since 1982, BellSouth (and/or its predecessors) sent DEMCO Form 6407 wherein it certified for each calendar year the number of DEMCO utility poles it had attached its cables to. DEMCO relied on BellSouth's pole count information to bill BellSouth each year. DEMCO has not attached any lines to BellSouth's poles over the past 15 years.

In early to mid-2010, DEMCO conducted a pole inventory survey to determine the total number of DEMCO poles BellSouth and other companies attached their cables to. The last DEMCO inventory was taken in 1994 or 1995. DEMCO finalized the pole count inventory during the last week of January 2011. BellSouth's certified Forms 6407 made the following claims regarding pole

use:

        1995 - 1999        14,546 poles
        2000               14,975 poles
        2001 - 2010       14,844 poles

DEMCO's final January 2011 pole count revealed that BellSouth had attached to 26,887 DEMCO poles. DEMCO further discovered that BellSouth had not complied with the notice, form and map provisions of the 1981 contract prior to BellSouth attaching its lines or cables to DEMCO's utility pole infrastructure. DEMCO maintains that BellSouth acted intentionally, fraudulently and in bad faith by providing DEMCO false information to cheat it out of hundreds of thousands of dollars in pole attachment rental payments. As a result, DEMCO seeks damages of $642,550.78 for past due pole attachment rentals from 1995 to 2009 and $953,934.45 for pole attachment rentals due for 2010 for a total amount of $1,596,485.23.

As previously noted, DEMCO filed a partial motion to dismiss[5] its breach of contract claim and its claim under the LUTPA for the 2010 contractual year. BellSouth does not oppose that motion. Accordingly, the motion will be granted and these claims will be dismissed with prejudice. In its response[6] to the motion to dismiss these claims for the 2010 contractual year, BellSouth also maintains that for the same reasons set forth in DEMCO's partial motion to dismiss, DEMCO's claim for fraud for the 2010 contractual year should also be dismissed. DEMCO has not disputed BellSouth's assertion. The court finds merit to BellSouth's argument and will also dismiss DEMCO's fraud claim for the 2010 contractual year.

---

[5] R. #30.

[6] R. #31.

4

The court notes that it converted BellSouth's motion to dismiss to a motion for summary judgment because of the evidence submitted regarding the 2010 contractual year. Because these claims are being dismissed, no further discovery is necessary, and the motion filed by BellSouth will be considered by the court as a motion to dismiss.

## RULE 12(B)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "[7] Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged.[8] The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true.[9] In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.[10] "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere

---

[7] Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977)(per curium) citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957)).

[8] Elliot v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989).

[9] Oppenheimer v. Prudential Securities, Inc., 94 F.3d 189, 194 (5th Cir. 1996).

[10] Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1137 (5th Cir. 1992).

conclusory allegations. . . ."[11] "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[12] "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."[13]

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it demands "more than an unadorned, the defendant-unlawfully-harmed-me accusation."[14] A complaint that offers "labels and conclusions;" or "a formulaic recitation of the elements of a cause of action will not do."[15] Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."[16]

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[17]

## LAW AND ANALYSIS

In its motion, BellSouth seeks to dismiss the following remaining claims: (1) breach of contracts claims for the period of 1995 to 2001, (2) all remaining claims under LUTPA, (3) any fraud claims occurring before December 16, 2010, and (4) a permanent injunction.

---

[11] Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992).

[12] Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

[13] Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995).

[14] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).

[15] Id.

[16] Id., at 557, 127 S.Ct. 1955.

[17] Id., at 570, 127 S.Ct. 1955.

*Breach of contract claims for the period of 1995 to 2001*

DEMCO filed its Complaint on December 16, 2011.[18] BellSouth maintains that DEMCO's breach of contract claims for the period of 1995 to December 2001 are untimely. First, BellSouth contends that any claims made for the period 1995 to December 2001 are barred by the 10-year prescriptive period applicable to breach of contract claims under Louisiana law. BellSouth argues that plaintiff's petition reveals on its face that the prescriptive period has expired, thus shifting the burden to plaintiff to show why the claim has not prescribed.[19] Hence, BellSouth maintains that claims based on any conduct that occurred between 1995 and December 16, 2001 must be dismissed.

The parties do not dispute that the prescriptive period for a breach of contract claim is ten (10) years. Because DEMCO's petition reveals on its face that the prescriptive period has expired for any breach of contract claims from 1995 until December 2001, the burden shifts to DEMCO to show why the claims for this period of time has not prescribed.[20] DEMCO must demonstrate that the running of prescription was suspended or interrupted.

DEMCO relies on the doctrine of *contra non valentum* to show that prescription was suspended for the 1995-2001 time period. The doctrine of *contra non valentum* turns upon the "reasonableness" of a plaintiff's actions in learning of and acting upon a cause of action, which DEMCO asserts is an issue of fact which cannot be resolved on the pleadings in a 12(b)(6) motion. The court notes that it converted the 12(b)(6) motion to a summary judgment motion and granted the parties additional time to conduct discovery and file additional briefs. DEMCO filed a joint

---

[18] DEMCO asserts that it fax-filed the Complaint on December 14, 2011.

[19] Wells v. Zadeck, 62 So.3d 861, 864 (La.App. 2nd Cir. 2011).

[20] Id.

motion to dismiss certain claims, and conceded that the remainder of BellSouth's motion could be considered by the court without any additional discovery.[21]

Under the doctrine of *contra non valentum,* the prescriptive period can be suspended based on the following:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on plaintiff's action;
>
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> (3) where the debtor himself has done some act effectually to prevent creditor from availing himself of his cause of action; or
>
> (4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.[22]

The prescriptive period is tolled until the plaintiff knew or should have known of a cause of action.[23] A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same.[24] Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry.[25] The time when prescription begins to run depends on the reasonableness of a plaintiff's action or inaction.[26]

---

[21] R. #30.

[22] Marin v. Exxon Mobil Corp., 48 So.3d 234, 245. (La. 10/19/10).

[23] Cole v. Celotex Corp., 620 So.2d 1154, 1156 (La.1993).

[24] Campo v. Correa, 828 So.2d 502 (La. 2002).

[25] Id., 828 So.2d at 511.

[26] Hogg v. Chevron, 45 So.3d 991, 1001 (La. 7/6/2001).

DEMCO asserts that the petition clearly asserts sufficient facts, which taken as true, satisfy the third and/or fourth category of *contra non valentum*. Specifically, (1) BellSouth intentionally concealed from DEMCO the fact that it had attached to its poles, and (2) BellSouth deliberately misrepresented the number of total attachments. Thus, this prevented DEMCO from becoming aware of its causes of action, and DEMCO could not have reasonably known of BellSouth's breach of contract for the years 1995 through 2001 until after it completed the pole inventory in January 2011.

The petition asserts that the 1981 Agreement obligated BellSouth to make a written request prior to attaching lines to DEMCO's poles. The Agreement further obligated BellSouth to report annually to DEMCO the number of DEMCO poles it was using so an accurate bill could be prepared. DEMCO relied on BellSouth to provide an accurate annual accounting. Furthermore, it was common industry practice for pole owners to rely upon the annual reports provided by the attaching party. For a 15-year period, BellSouth represented and/or affirmatively certified to DEMCO that it was using no additional poles when in fact, the January 2011 pole inventory revealed that BellSouth was actually using nearly 27,000 DEMCO poles.

When DEMCO completed its inventory count in January 2011, it first became aware of the deliberate and intentional false reports submitted by BellSouth. Thus, DEMCO maintains that prescription should commence when it first had knowledge of the concealment and false recording by BellSouth. Therefore, DEMCO argues that the December 14, 2011 filing of the instant lawsuit is timely.

BellSouth argues that its actions were not enough to "lull plaintiff into a false sense of

security and a course of inaction."[27] BellSouth contends that the concealment of new pole attachments and misrepresentations of the total number of attachments are not the type of "compelling" acts necessary "to bring this case within that class of situations adequate to suspend the running of prescription."[28] We disagree.

BellSouth intentionally misrepresented the fact that they were using or attaching to DEMCO's utility poles. Every year, BellSouth representatives allegedly falsified Form 6407 which certified the number of poles it had attached lines or cables to. Furthermore, BellSouth allegedly attached its lines or cables to DEMCO's utility poles without the requisite written consent. Thus, the court finds that plaintiff's petition sufficiently demonstrates that this case is within the class of situations adequate to suspend the running of prescription as to DEMCO's breach of contract claims.

*Does DEMCO's LUTPA claims fall within the statute's coverage?*

BellSouth maintains that DEMCO's claims should be dismissed because the acts of which DEMCO complains of were not performed "in the conduct of any trade or commerce" and thus do not fall within the statute's coverage. Section 51:1405(A) of the LUTPA declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[29] "Trade or commerce" is defined to mean "the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or

---

[27] Gines v. D.R. Horton, Inc., 2011 WL 3236097, at *7 (M.D. La. July 28, 2011) citing Williams v. Red Barn Chemicals, Inc. 188 So.2d 78 (La.App. 1st Cir. 1966).

[28] Id.

[29] La.R.S. 51:1405(A).

commerce directly or indirectly affecting the people of the state."[30]

BellSouth argues the it has not advertised, offered for sale, or sold or distributed anything; it has simply leased space from DEMCO on DEMCO's poles. Thus, BellSouth has not "engaged in an unfair or deceptive trade practice" as the term is defined by LUTPA. BellSouth relies on Webb v. Theriot,[31] wherein the court held that a lease or sublease of hunting property did not fall within the definition of trade or commerce. BellSouth also cites Montegut v. Williams Commc'ns,[32] wherein the company's unauthorized installation of cables on plaintiff's land did not form the basis of a LUTPA claim because plaintiff's claim was not one for the advertising, offering for sale, sale or distribution of any services, but was essentially trespassing.

DEMCO argues that the definition of "trade or commerce" under LUTPA broadly includes "any trade or commerce directly or indirectly affecting the people of this state." DEMCO asserts that pole attachment contracts are significant acts of trade or commerce. DEMCO cites Cheramie Services, Inc. v. Shell Deepwater Production, Inc.,[33] wherein the Louisiana Supreme Court held that "LUTPA grants a right of action to any person, natural or juridical, who suffers an ascertainable loss as a result of another person's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Furthermore, "[a]lthough business consumers and competitors are included in the group afforded this private right of action, they are not its

---

[30] La.R.S. 51:1402(9).

[31] 704 So.2d 1211, 1215 (La.App. 1997).

[32] 109 F.Supp.2d 496, 499 (E.D.La.2000).

[33] 35 So.3d 1053, 1057 (La. 4/23/10).

11

exclusive members."[34] The court finds that there is no basis in law to dismiss DEMCO's LUTPA claims and that the statute's definition of "trade or commerce" is broad enough to include the conduct alleged in DEMCO's petition.

*Are DEMCO's LUTPA claims prescribed?*

BellSouth also maintains that DEMCO's LUTPA claims are untimely because they were not brought within the 1-year peremptive period. DEMCO maintains that it pled timely LUTPA claims because the Petition asserts that BellSouth deliberately concealed and misrepresented the number the number of poles it was using well within a year of suit being filed. The petition alleges that "[f]rom 1995 to 2011, AT&T (now BellSouth) knowingly and intentionally 'certified' that anywhere from 14,546 to 14,484 of DEMCO's poles were being attached to by [BellSouth] when the truthfully known to [BellSouth]– is that up to 26,887 DEMCO utility poles were being used by [BellSouth]." DEMCO then argues that because DEMCO's petition clearly alleges that BellSouth engaged in fraudulent and unfair trade practices in 2011, the LUTPA claims were timely filed on December 14, 2011.

BellSouth maintains that the LUTPA claims for the period of 1995-2009[35] are peremptively prescribed. LSA-R.S. 51:1409(E) provides that a claim for violation of LUTPA must be brought within the peremptive period. LUTPA violations "shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action."[36] "Peremption is a period of

---

[34] Id.

[35] The 2010 LUTPA claims are being voluntarily dismissed pursuant to DEMCO's voluntary motion to dismiss said claims. R. #30.

[36] LSA-R.S. 51:1409(E) ("The action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action.").

12

time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period."[37] In <u>Canal Marine Supply, Inc. v. Outboard Marine Corp. of Waukegan, Ill.</u>,[38] the plaintiff attempted to argue the doctrine of *contra non valentum* alleging that the prescriptive period of Louisiana Revised Statute 51:1409 did not toll because plaintiff was unaware of certain acts by defendants. The court rejected this argument holding that the one year prescriptive period was peremptive and therefore not subject to interruption or suspension. The court opined as follows:

> In determining whether a time limitation fixed by law is prescriptive or peremptive courts consider a number of criteria. As a general rule, if the statute which creates a right also provides the time period in which that right must be exercised, the period is viewed as peremptive. However, this general rule is not the sole test for determining the nature of a time limitation. Courts should also consider the legislative intent as revealed by the statute in its entirety, including the purpose sought to be achieved.
>
> R.S. 51:1409 A. created a cause of action which did not exist in Louisiana before 1972. R. S. 51:1409 E. enacted at the same time, fixed the time period in which this newly created right must be exercised. Thus, under the general rule . . ., the period would be peremptive. . . .
>
> Taken as a whole, the UTPA is intended to protect the *public's* interest in fair trade and competition. The fact that private persons may invoke the provisions of the act to redress their individual injuries does not change the basically public nature of this law. Moreover, it is clear that R.S. 51:1409 is penal in nature. Its provision for triple damages is obviously intended to punish the wrongdoer as well as provide private individuals with an incentive to bring suit. Because the statute is penal in nature, it is subject to reasonably strict construction.
>
> In our opinion the time period set forth in R.S. 51:1409 E. must be viewed as peremptive. The special nature of the private right of action under the UTPA and the serious consequences of a successful action both militate in favor of an absolute, uninterruptible time period. The UTPA's provision for triple damages is in

---

[37] LSA-C.C. art 3458.

[38] 522 So.2d 1201 (La.App. 4th Cir. 1988).

derogation of the ordinary rules on damages. Likewise, the right of a private individual to bring suit under the UTPA is a special feature in a law which, in all other respects, depends on the attorney general and other public administrative officials for enforcement. By including a provision setting forth the time in which the private right of action must be asserted, the legislature showed an intent to remove this unique right from the ordinary rules of prescription. The plain language of R.S. 51:1409 E. shows an intent to make that period absolute (that is peremptive). Section E. provides that the action must be brought within one year ". . . running from the time of the transaction or act which gave rise to this right of action". There is no qualifying language attached to this very definite statement of when the clock starts running on a private action under the UTPA. If the legislature had wanted this time period to be interruptible it could either have said so specifically or have let the ordinary rules of prescription apply by not making special provision for it in the act. It did neither.[39]

DEMCO's complaint alleges that the contract required that DEMCO and BellSouth each report annually to the other the total number of poles that each party attached to which belong to the other party.[40] BellSouth sent these annual reports every year since 1982.[41] The complaint further alleges that these annual reports contained inaccurate pole counts[42] which forms the basis of DEMCO's LUTPA claims. BellSouth argues that the one-year peremptive period for the LUTPA claims began to run each time DEMCO received the inaccurate annual report which was around December 1 of each year as required by the contract. DEMCO fax-filed the instant lawsuit on December 14, 2011. Consequently, BellSouth maintains that DEMCO's claims as to the period between 1995 and 2009 are barred because the most recent annual report sent by BellSouth during that period was sent over two years before the suit was filed. The court agrees and will dismiss all LUTPA claims for the period between 1995 and 2009.

---

[39] Canal Marine Supply, Inc. 522 So.2d at 1203-1204 (citations omitted).

[40] Complaint, ¶ 7. R. #1.

[41] Id. ¶ 8.

[42] Id., ¶ 20.

*Are DEMCO's Fraud claims occurring prior to December 14, 2010 prescribed?*

BellSouth maintains that DEMCO's claim for "civil fraud" is prescribed because Louisiana law provides that such claims prescribe after one year. DEMCO maintains that its claims for fraud are based in contract, and subject to the ten-year prescriptive period for personal actions. DEMCO argues that fraud can be pled as a basis for a contractual action and that the correct prescriptive period depends upon the nature of the duty breached.[43] In Terrebonne Parish School Bd. v. Mobil Oil Corp.,[44] the court explained that [w]here a claim for breach of contract exists, plaintiff is entitled to plead his case for damages *ex contractu* and assert the ten-year statute of limitations applicable to actions for breach of contract. However, in order for the ten-year statute of limitations applicable to actions for breach of contract to apply, plaintiff has the burden to prove that the defendant breached some contractual duty above and beyond a general duty not to damage another's property.[45] Moreover, the action on a contract flows from a breach of a special obligation, while an action in tort flows from the violation of a general duty.[46]

DEMCO argues that its claim for fraud is based upon BellSouth's intentional breach of two specific contractual obligations: (1) intentionally attaching to DEMCO poles without first requesting permission to do so, and (2) knowingly and intentionally falsifying the number of DEMCO poles

---

[43] Citing Griffin v. BSFI Western E&P, Inc., 812 So.2d 726, 734 (La.App. 1 Cir. 2/15/02); Tealwood Properties, LLC v. Succession of Graves, 64 So.3d 397, n.3 (La.App. 2 Cir.4/27/11).

[44] 310 F.3d 870 (La.App. 5th Cir. 2002).

[45] Citing Certain Underwriters at Lloyd's v. SeaLar, 787 So.2d 1069, 1075 (La.App. 4th Cir. 2001).

[46] Ridge Oak Development, Inc. v. Murphy, 641 So.2d 586 (La.App. 4 Cir. 1994).

15

BellSouth was using in its annual reports in violation of Article XI(a) of the contract. It is evident to this court that DEMCO's claims arise under the contracts and not from a general duty owed by all persons. When evaluating the applicable prescriptive period, we look to the character of the action disclosed in the pleadings.[47] Without the existence of the contract between these parties, DEMCO would not have a fraud claim in this action. In other words, DEMCO's fraud claim is derived from the terms and/or obligations set forth in the contract. Therefore, we conclude that the ten-year prescriptive period applies and will deny BellSouth's motion to dismiss the fraud claims based on prescription.

BellSouth maintains that to the extent attorney fees are being sought based on the fraud claims, Louisiana law does not allow such an award for fraud claims committed in the performance of a contract.[48] DEMCO has failed to address this argument in its memoranda. BellSouth cites Ratcliff, supra which held that Louisiana Civil Code article 1958 provides for attorney fees where a contract is rescinded because of fraud, but does not award such fees for fraud committed in the performance of the contract. There is no doubt that DEMCO's fraud claims are based on the performance of the contract. DEMCO has not provided the court with any basis in law for an award of attorney fees. Accordingly, any such award for attorney fees based on fraud will be dismissed.

*Permanent injunction*

BellSouth maintains that DEMCO's request for a permanent injunction must be dismissed because DEMCO cannot plead that it would be without an adequate remedy at law. Plaintiff's complaint makes the following allegation:

---

[47] Keenan v. Donaldson, Lufkin & Jenrette, Inc., 575 F.3d 483 (La.App. 5 Cir. 2009).

[48] Citing Ratcliff v. Boydell, 674 So.2d 272, 282 (La.App. 4th Cir.1996).

16

DEMCO, because of AT&T's flagrant action for at least 15 years, is entitled to a permanent injunction against AT&T decreeing that AT&T may not attach its cables or facilities to DEMCO's utility poles without complying in all respects to the notification and information provisions of the 1981 Contract.

In Huber Oil Co. of Louisiana, Inc.,[49] the appellate court reversed the state court's grant of a preliminary injunction finding that an action to enforce a contract could be measured according to a pecuniary standard. The court held that the party seeking an injunction must show that the loss alleged cannot be adequately compensated in money, or that it is a loss for which damages are not susceptible of being measured by pecuniary standards.[50] To be entitled to such a harsh remedy, the plaintiff must establish that irreparable injury will result at the hands of defendant if plaintiff's prayer is denied.[51] Plaintiff has failed to make this showing. Accordingly, plaintiff's claims for a permanent injunction will be dismissed.

## CONCLUSION

For the reasons given above, the motions to dismiss will be granted in part and denied in part. The motions will be granted to the extent that DEMCO's breach of contract, LUTPA and fraud claims for the 2010 contractual year will be dismissed with prejudice; the motions will be granted dismissing with prejudice DEMCO's LUTPA claims for the period between 1995 and 2009 because these claims are prescribed; the motions will be granted to the extent that a claim for attorney fees based on fraud will be dismissed with prejudice; the motions will be granted to the extent that the claim for permanent injunction will be dismissed with prejudice; otherwise the motions will be

---

[49] 422 So.2d 597, 600 (La.App. 3 Cir. 1982).

[50] LeBlanc v. Lyons, 401 So.2d 626 (La.App. 3 Cir. 1981).

[51] Southwest Sales & Manufacturing Co., Inc. v. Delta Express, Inc., 342 So.2d 281 (La.App. 3 Cir. 1977), writ refused 345 So.2d 48 (La.1977).

denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 9th day of July, 2012.

                                             JAMES T. TRIMBLE, JR.
                                             UNITED STATES DISTRICT JUDGE